635 So.2d 1281 (1994)
Jerome Anthony LASTRAPES, Respondent,
v.
Rose Marie WILLIS & Jerome Anthony Lastrapes, Jr., Relators.
STATE of Louisiana, ex rel. Rose M. WILLIS, Relator,
v.
Jerome LASTRAPES, Respondent.
No. W93-1417.
Court of Appeal of Louisiana, Third Circuit.
April 6, 1994.
Rehearing Denied May 19, 1994.
*1282 Henry R. Liles, Lake Charles, for Jerome Anthony Lastrapes.
Cynthia Guillory, Paul Peter Reggie, Lake Charles, for Rose Marie Willis etc.
Before DOUCET and THIBODEAUX, JJ., and BERTRAND[*], J. Pro Tem.
THIBODEAUX, Judge.
This is a disavowal action in which the respondent, Jerome Anthony Lastrapes, is attempting to prove that he is not the biological father of Jerome Anthony Lastrapes, Jr. The issue before us is whether or not the trial court incorrectly ordered blood tests to be administered to the mother, her minor child, and the presumed father to determine the paternity of the minor child.

FACTS
Jerome Anthony Lastrapes, Jr. was born on November 6, 1979 to Rose Marie Willis. The child was initially named Jerome Anthony Willis but his birth certificate was later officially changed to Jerome Anthony Lastrapes, Jr. as early as May 17, 1983. Jerome Anthony Lastrapes executed an acknowledgment of paternity on July 28, 1980 before James Spruel, Jr., a Lake Charles attorney. The Acknowledgment of Paternity is in authentic form and was voluntarily executed.
The State of Louisiana, Department of Social Services, brought an action pursuant to La.R.S. 46:236.1 et seq. on behalf of Ms. Willis against Jerome Lastrapes in December, 1990 for child support for the minor child. On December 11th, the Honorable Billy H. Ezell signed an Income Assignment Order authorizing Lastrapes's employer to withhold part of his wage or salary for the purpose of paying child support.
On April 8, 1993, Lastrapes filed a petition to disavow paternity alleging that he was not the biological father of the minor child and that he had discovered this supposed fact in February, 1993. Another individual, Sam Joubert, informed him that he and Ms. Willis had sexual relations in March, 1979.
The suits entitled "Jerome Anthony Lastrapes v. Rose Marie Willis and Jerome Anthony Lastrapes, Jr." and "State of Louisiana, ex rel Rose M. Willis v. Jerome Lastrapes" were consolidated for trial in Calcasieu Parish.
An exception of no cause and no right of action was filed by the state and orally denied by the trial court. On October 18, 1993, the trial court ordered Mr. Lastrapes, Ms. Willis, and the minor child to submit to paternity blood testing. The state appeals asserting that the trial court erred in ordering that blood tests be administered to the parties to determine paternity in Mr. Lastrapes's disavowal action pursuant to La.R.S. 9:396 when there is a valid preexisting acknowledgment in authentic form.

LAW AND DISCUSSION
It is the announced public policy of this state that innocent children should not be bastardized. This is especially true, we think, when a child has previously been acknowledged by an authentic act whose validity *1283 has not been challenged. Furthermore, the state has a valid interest in conservation of its public assistance fund, in preserving the legitimacy of its children, and in insuring a child's welfare. These considerations override the respondent's interest in a court-ordered blood test under the circumstances of this case. See, e.g., In Interest of J.M., 590 So.2d 565 (La.1991). In In Interest of J.M., the supreme court was concerned with the question of what must be established in a paternity suit to trigger court-ordered blood testing. It concluded that the moving party must first show a reasonable possibility of paternity. In our view, that conclusion is equally applicable to a situation where an alleged father is attempting to disavow a minor child. The record discloses that Mr. Lastrapes failed to prove a reasonable possibility of a lack of paternity. He did not establish a prima facie case warranting issuance of a court-ordered blood test under the rationale of In Interest of J.M., supra.
We find these facts to be especially salient to our determination of this matter. Mr. Lastrapes voluntarily signed an acknowledgment of paternity on July 28, 1980. This document was in authentic form. "An authentic act constitutes full proof of the agreement it contains as against the parties, their heirs, and their successors by universal or particular title." La.Civ.Code art. 1835. (Emphasis added). The respondent alleges that Ms. Willis "convinced" him to sign the acknowledgment of paternity. Such an allegation, even if proven, is insufficient to establish the invalidity of the authentic act. As the first circuit noted in Eymard v. Terrebonne, 560 So.2d 887, 889 (La.App. 1st Cir.), writ denied, 567 So.2d 614 (1990): "In the absence of convincing proof to the contrary, the validity of the instrument as an authentic act is sustained." The evidence submitted by Lastrapes is not convincing.
The birth certificate of the minor child names respondent, Jerome A. Lastrapes, as the father. An income assignment order signed by the Honorable Billy H. Ezell on December 11, 1990 stated in part that: "... the [court] did not find good cause not to issue an order requiring the defendant's [Jerome Lastrapes] present and/or future payors of any income...." This certainly implies a recognition of Lastrapes's obligation to pay child support to the minor child and, as such, impliedly judicially recognizes him as the father.
Moreover, the record reflects that the mother had a normal term pregnancy and the child was born on November 6, 1979. Ms. Willis had sexual relations with Mr. Lastrapes in January or February, 1979 and apparently with Sam Joubert in March. Assuming these facts to be true, the minor child would have been born in December, not November, 1979, if Mr. Joubert was the father.
Lastrapes's lawsuit was filed in April, 1993. At that time, no specific codal or statutory provision governed the time limitation within which a disavowal action must be brought by a father who was not the husband of the mother. The Civil Code only refers to time limits for disavowal by the husband. See, e.g., La.Civ.Code arts. 187-190. It was not until Act No. 32 of the 1993 Regular Session codified at La.R.S. 9:305[1] was adopted and made effective on August *1284 15, 1993, that such a time period was established with respect to a suit for disavowal of paternity. That statute, by its terms, applies retrospectively. Furthermore, the time limitation in a disavowal action is peremptive. Farrell v. Farrell, 555 So.2d 39 (La.App. 1st Cir.1989). As the supreme court observed in Pounds v. Schori, 377 So.2d 1195, 1198 (La. 1979):
"... A peremptive statute ... totally destroys the previously existing right with the result that, upon expiration of the prescribed period, a cause of action or substantive right no longer exists to be enforced." (Citations omitted).
The plea of peremption may be supplied by the court prior to final judgment. La. Civ. Code art. 3460.
Accordingly, we conclude that respondent did not have a cause of action or a substantive right at the time he filed his lawsuit in April, 1993. His petition, therefore, is dismissed with prejudice.
The respondent argues that a section of the statute recently enacted, 1993 Act No. 32 § 2, preserves his right to bring this action. We disagree. This action was a separately instituted, ordinary action by the respondent. It was not "an action ancillary to any child support proceeding." See, 1993 Laws No. 32, § 2. Since it cannot be characterized as such an action, he cannot avail himself of the 180 days from the effective date of this act within which to bring this action. That this lawsuit was consolidated with the state's action for non-support against Mr. Lastrapes does not make it an ancillary action. According to Black's Law Dictionary, 5th edition (1983), an ancillary proceeding is:
"One growing out of or auxiliary to another action or suit, or which is subordinate to or in aid of a primary action, either at law or in equity. In state courts, a procedural undertaking in aid of the principal action..."
His lawsuit is the principal action and not the ancillary action. Thus, the provisions of 1993 Laws No. 32, § 2 are inapplicable.

CONCLUSION
For the foregoing reasons, the judgment of the trial court ordering Jerome Anthony Lastrapes, Rose Marie Willis, and Jerome Anthony Lastrapes, Jr. to submit to paternity blood testing is hereby set aside and vacated. Furthermore, for the reasons assigned, the respondent's petition to disavow paternity is dismissed with prejudice.
All costs of these proceedings are assessed against Jerome Anthony Lastrapes.
REVERSED AND RENDERED.
NOTES
[*] Honorable Lucien C. Bertrand, Jr., Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] § 305. Disavowal of paternity; ancillary to child support proceeding

Notwithstanding the provisions of Civil Code Art. 189 and for the sole purpose of determining the proper payor in child support cases, if the husband, or legal father who is presumed to be the father of the child, erroneously believed, because of misrepresentation, fraud, or deception by the mother, that he was the father of the child, then the time for filing suit for disavowal of paternity shall be suspended during the period of such erroneous belief or for ten years, whichever ends first.
Act 1993, No. 32, Section 2. The provisions of this Act shall be applied retrospectively such that a husband or legal father who, because of the mother's misrepresentation, fraud, or deception, erroneously believed he was the father of a child, and whose action for disavowal has prescribed, may institute such an action ancillary to any child support proceeding brought within one hundred eighty days of the effective date hereof, and any such suit not instituted within that time and any claims relating thereto shall be forever barred.