COX, J.
Appellants, Kurt and Tabitha Perkins (referred to individually as "Kurt" and "Tabitha," respectively, and collectively as the "Perkinses"), appeal a judgment from the First Judicial District Court, Parish of Caddo, State of Louisiana, in favor of Appellees, Air U Shreveport, LLC ("Air U"), ABC Insurance, and John Doe(s). Air U filed a motion for summary judgment, which the trial court partially granted, dismissing part of the Perkins's claims.[1] The Perkinses appeal the trial court's partial granting of the motion for summary judgment. For the following reasons, we affirm.
FACTS
Air U is an indoor trampoline park located in Shreveport, Louisiana. Kurt and his wife, Tabitha, were patrons at Air U on July 19, 2014, when Kurt was injured. Kurt was 24 years old at the time of the injury and had no known or apparent medical issues. He had recently completed a stint in the U.S. Marine Corps, and was working part-time while attending a technical college.
On July 2, 2015, the Perkinses filed suit against Air U, ABC Insurance Company, and John Doe(s).[2]
In his deposition, Kurt stated, "I don't know why it happened. I thought I could do a jump on a trampoline like the other hundred kids jumping there." He stated he could not remember what kind of jump he was doing before the injury and recalled *190 that he landed on both feet when his left knee gave out. When his knee gave out, he fell to the trampoline, holding his leg and hollering. He stated he lay on the trampoline until he left on a stretcher with the emergency medical technicians.
Kurt stated he had never had any other injury to his left leg or medical treatment of his left leg. He stated that by looking at the trampoline, it was set up and ready to use. He said he did not notice any holes or loose or broken springs. Kurt also stated he did not notice any difference between the trampoline he was injured on and the other trampolines.
Tabitha also stated in her deposition that she did not notice any defects or anything visually wrong with the trampolines. She recalled that before the accident, Kurt was bouncing off the wall, but at the time of the accident, was jumping straight up and down. She stated an employee of Air U told her he could not call an ambulance because only a manager could call an ambulance.
James Murphy, an owner of Air U, stated in his deposition that Mr. McNabb and Mr. Hutchinson are his business partners in Air U. He described Mr. McNabb as having extensive trampoline experience, which includes a background in gymnastics and serving on several national boards in the trampoline sport industry. Mr. Murphy stated Air U had no liability insurance in effect in July 2014 and is not a member of the International Association of Trampoline Parks.
Mr. Murphy said that at the time Kurt was jumping, the rules video was playing on a continuous loop in a public area and the written rules were posted on public walls. He described their inspection process as a daily tension test and twice-weekly structural check. Before a patron is able to jump at Air U, he or she is required to read and sign a waiver. Kurt signed this waiver before his injury.
According to his affidavit and CV, Dr. Gerald S. George has a background in biomechanics, trampolines, and institutional trampoline courts. He earned a Ph.D. in biomechanics with a minor in psychology. Dr. George inspected Air U on behalf of the plaintiffs and stated the following in his affidavit:
Allowing use of a trampoline device to propel oneself to other trampolines is an unreasonably dangerous practice. The unreasonably dangerous practice predisposes participants to a higher than ordinary risk of serious injury. From a biomechanical standpoint, the injuries sustained by Mr. Perkins are consistent with what would be expected from the activity.
On April 17, 2017, Air U filed a motion for summary judgment. At the hearing on the motion, the plaintiffs' attorney stated the defect was in the design of the trampoline park itself because it was not compliant with ASTM[3] standards and it was inherently dangerous to have trampolines mounted at an angle on the walls. Air U's attorney argued the alleged ASTM violations and wall trampolines were irrelevant because Kurt was jumping straight up and down at the time of the incident. The trial judge granted the motion in favor of Air U stating, "there were no genuine issues of material fact regarding defects in Air U [.]" The Perkinses filed this appeal, arguing the trial judge erred in granting Air U's motion.
DISCUSSION
I. Unreasonable Risk of Harm
In their first assignment of error, the Perkinses argue the trial court erred by *191 failing to find a genuine issue of material fact as to whether the trampolines, as designed, installed, and inspected by Air U, were the defect which created an unreasonable risk of harm. They assert that they have sufficient evidence to meet the elements for a claim set forth in La C.C. arts. 2317 and 2317.1 and that a genuine issue of material fact exists.
The law pertaining to motions for summary judgment is well settled. At the time the instant motion was filed, La. C.C.P. art. 966(A)(3) and (D)(1) provided, in pertinent part:
(A)(3) After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law.
* * *
(D)(1) The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.
This provision initially places the burden of producing evidence at the hearing on the motion for summary judgment on the mover, who can ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent's case. Gilley v. Gilley Enterprises, Inc ., 51,328 (La. App. 2 Cir. 5/2/17), 222 So.3d 885. At that point, the party who bears the burden of persuasion at trial must come forth with evidence which demonstrates he or she will be able to meet the burden at trial. Once the motion for summary judgment has been properly supported by the moving party, the failure of the nonmoving party to produce evidence of a material factual dispute mandates the granting of the motion. Id.
A fact is "material" when its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery. Facts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute. Barfield v. Diamond Constr. Inc ., 51,291 (La. App. 2 Cir. 4/5/17), 217 So.3d 1211, writ denied , 2017-0751 (La. 9/15/17), 228 So.3d 1205.
Appellate courts review summary judgments de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Garrison v. State Farm Fire & Cas. Co ., 51,245 (La. App. 2 Cir. 4/5/17), 217 So.3d 586.
La. C.C. arts. 2317 and 2317.1 state, respectively:
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.
* * *
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing *192 that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
To recover for damages caused by a defective thing, the plaintiff must prove the following: (1) the thing was in the defendant's custody; (2) the thing contained a defect which presented an unreasonable risk of harm to others; (3) the defective condition caused the damage; and (4) the defendant knew or should have known of the defect. Wells v. Town of Delhi , 51,222 (La. App. 2 Cir. 4/5/17), 216 So.3d 1095, writ denied , 2017-0753 (La. 9/22/17), 227 So.3d 821.
a. Thing is in defendant's custody
The test for determining custody is twofold: (1) whether the person bears such a relationship as to have the right of direction or control over the thing, and (2) what, if any, kind of benefit the person derives from the thing. Barnes v. Riverwood Apartments P'ship , 43,798 (La. App. 2 Cir. 2/4/09), 16 So.3d 361.
Air U owns the trampolines and equipment located in their trampoline park. Air U also derives revenues from allowing patrons to use their trampolines. It is clear, element one is met. Air U had custody of the trampolines and trampoline park at the time of the incident.
b. Defect
A defect is a condition creating an "unreasonable risk of harm." The imperfection must pose an unreasonable risk of injury to persons exercising ordinary care and prudence. Lawrence v. Sanders , 49,966 (La. App. 2 Cir. 6/24/15), 169 So.3d 790, writ denied , 2015-1450 (La. 10/23/15), 179 So.3d 601. There is no fixed rule for determining whether the thing presents an unreasonable risk of harm. The trier of fact must balance the gravity and risk of harm against the individual and societal rights and obligations, the social utility, and the cost and feasibility of repair. Simply put, the trier of fact must decide whether the social value and utility of the hazard outweigh, and thus justify, its potential harm to others. The concept of whether a defect presents an unreasonable risk of harm, which requires a balancing of the risk and utility of the condition, is not a simple rule of law which can be applied mechanically to the facts of the case. Johnson v. City of Monroe , 38,388 (La. App. 2 Cir. 4/7/04), 870 So.2d 1105, writ denied , 2004-1130 (La. 6/25/04), 876 So.2d 843.
There are several factors that may be considered in determining whether a hazard presents an unreasonable risk of harm. The degree to which a danger is evident to a potential victim is one factor in determining whether the condition is unreasonably dangerous. The accident history of the defect is also a relevant consideration in the unreasonable risk evaluation. Moore v. Oak Meadows Apartments , 43,620 (La. App. 2 Cir. 10/22/08), 997 So.2d 594.
The determination that a defect presents an unreasonable risk of harm predominantly encompasses an abundance of factual findings, which differ greatly from case to case. The unreasonable risk of harm criterion entails a myriad of considerations and cannot be applied mechanically. Id.
As the trial judge noted, the Perkinses failed to point to a defect or condition creating an unreasonable risk of harm. They argue the park as a whole creates an unreasonable risk of harm.
*193 In determining if the park as a whole poses an unreasonable risk of harm, we must balance the societal value and utility against the potential for harm. In his deposition, Mr. Murphy estimated that in the nine months Air U was open in 2014, it had roughly 90,000 patrons visit. As evidenced from the depositions, the patrons range from children to adults. Patrons may visit the trampoline park individually or for parties, which is why the Perkinses were present that day. It is clear from the number of patrons, as well as the use for parties, that Air U has a high societal utility for all ages.
Mr. Murphy indicated Air U had 88 documented injuries (including Kurt) in the first 9 months they were open, with only a handful needing to leave by ambulance. He also stated Air U is below the national average in trampoline park injuries. He stated the industry standard for accidents is triple what Air U experiences. Mr. Murphy said the national average injury rate is .3 to .35 percent.
According to this information, we find the societal value of Air U outweighs the potential for harm. We agree with the trial court that the Perkinses have not proven a defect in Air U.
The plaintiff is required to prove all four elements for a claim under 2317.1. Because the Perkinses have failed to prove the existence of a defect, we will not discuss the remaining two elements.
II. Res Ipsa Loquitur
In their second assignment of error, the Perkinses argue the trial court erred by failing to apply the doctrine of res ipsa loquitur in the granting of the motion for summary judgment. In Linnear v. CenterPoint Energy Entex/Reliant Energy , 2006-3030 (La.9/5/07), 966 So.2d 36, the Louisiana Supreme Court explained the proper application of the doctrine of res ipsa loquitur :
The doctrine of res ipsa loquitur applies in cases where the plaintiff uses circumstantial evidence alone to prove negligence by the defendant[.] The doctrine, meaning "the thing speaks for itself," permits the inference of negligence on the part of the defendant from the circumstances surrounding the injury[.] [T]he doctrine applies when three criteria are met. First, the injury is the kind which ordinarily does not occur in the absence of negligence. While the plaintiff does not have to eliminate all other possible causes, he must present evidence indicating at least a probability that the accident would not have occurred absent negligence. Second, the evidence must sufficiently eliminate other more probable causes of the injury, such as the conduct of the plaintiff or a third person. The circumstances must warrant an inference of negligence. Third, the negligence of the defendant must fall within the scope of his duty to plaintiff. This may, but not necessarily, be proved in instances where the defendant had exclusive control of the thing that caused the injury.
The trial judge determines whether reasonable minds could differ on the presence of all three criteria. If reasonable minds could not conclude that all three criteria are satisfied, then the legal requirements for the use of res ipsa loquitur are not met. Milke v. Ratcliff Animal Hosp., Inc. ex rel. Ratcliff , 48,130 (La. App. 2 Cir. 7/10/13), 120 So.3d 343.
As explained in Linnear , "the event must be such that in light of ordinary experience, it gives rise to an inference that someone must have been negligent." In light of ordinary experience, trampoline injuries of this kind do not lead to an inference that the trampoline owner was negligent. Jumping straight up and down *194 on a single trampoline before one's knee gives out does not warrant an inference of negligence. Therefore, we find the doctrine of res ipsa loquitur is not applicable in this matter.
CONCLUSION
For the reasons stated above, we affirm the trial court's granting of Air U's motion for summary judgment. Costs associated with this appeal are assessed to the Appellants.
AFFIRMED.

Although it is referenced as a granting of the motion for summary judgment, it is actually a partial granting of the motion. There is still a genuine issue of material fact as to whether the employees took appropriate action in informing Kurt of the risk of possible injury and whether appropriate medical attention was timely provided.

The names of Air U's insurance company and employees were unknown at the time the suit was filed.

ASTM stands for the "American Standard for Testing Materials."